# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. Box 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 351 9291
302 425 3012 FAX
jblumenfeld@mnat.com

May 4, 2012

*VIA ELECTRONIC FILING*

The Honorable Sue L. Robinson
United States District Court
    for the District of Delaware
844 North King Street
Wilmington, DE 19801

> Re:    *Leo Pharma A/S v. Tolmar, Inc.*
>        C.A. No. 10-269-SLR (Consolidated)

Dear Judge Robinson:

Pursuant to Your Honor's instructions during yesterday's teleconference, we write on behalf of plaintiff LEO Pharma to explain why a stay of the part of the case relating to the '013 patent is the correct and sensible outcome in light of this week's decision by the Board of Patent Appeals and Interferences in the reexamination proceeding of the '013 patent. We respectfully submit that dismissal of the '013 case, as Tolmar now proposes, is a drastic outcome which would be prejudicial to LEO Pharma, and also legally incorrect.

First, there is no question that this Court continues to have subject matter jurisdiction over the '013 patent because the reexamination is not final and the '013 patent is still enforceable until the PTO issues a reexamination certificate. That cannot happen until *after* the Federal Circuit decides LEO Pharma's appeal of the Board's decision. *See* 35 U.S.C. § 316; *In re Bingo Card Minder Corp.*, No. 534, 1998 WL 130514, at *2 (Fed. Cir. Feb. 25, 1998) (unpublished) ("[W]e agree with Fortunet that the district court has jurisdiction over the infringement action. Before the courts, a patent is presumed valid and it remains so until it is no longer viable as an enforceable right. A claim is not canceled until the Board acts and the Commissioner cancels the claims. Because the Commissioner has not yet issued a certificate canceling the claims, they have not been finally determined to be unpatentable. So long as there is a valid patent, a justiciable case or controversy exists with respect to the patent infringement action in the district court.") (citations and quotations omitted); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1366 n.2 (Fed. Cir. 1991). Because this Court clearly has subject matter jurisdiction, there is no basis to dismiss LEO Pharma's assertion of the '013 patent for lack of jurisdiction.

The Honorable Sue L. Robinson
May 4, 2012
Page 2

Second, dismissal of the part of the case relating to the '013 patent is more drastic than a stay, and would prejudice LEO Pharma. For example, a dismissal now would prematurely end the statutorily-provided 30-month stay of Tolmar's potential launch of its proposed generic product. If Your Honor dismisses, and then rules against LEO Pharma on the merits of the '706 patent after the trial next week but before the 30-month stay expires in January 2013, Tolmar could launch its product despite the lack of finality from the Federal Circuit on the status of the '013 reexamination proceeding. Any such launch would cause immediate, substantial irreparable harm to LEO Pharma even if Tolmar were later enjoined. And given Tolmar's probable assertion of intervening rights (to which LEO believes it would *not* be entitled), the possibility exists that LEO Pharma would receive no compensation for its loss. Compared to that significant harm caused by the disruption of the status quo that currently exists pursuant to the Hatch-Waxman framework, any potential harm to Tolmar from a stay would be negligible. A stay would at worst, require Tolmar to delay any market entry until the Federal Circuit rules on the '013 patent or the expiration of the 30-month stay in January 2013. This outcome is fully consistent with the Hatch-Waxman statutory scheme, unlike the outcome that could occur if the Court dismisses the case relating to the '013 patent.

Third, Tolmar's recitation of the facts is incorrect. In yesterday's telephone conference, Tolmar asserted that the two claims that have been asserted against it from the current '013 patent have been cancelled during the reexamination. Claim 23 has never been cancelled. Claim 22 was cancelled, but only because claim 1 was narrowed to be virtually identical to claim 22. Claim 23 now depends on the amended version of claim 1. The two claims are reproduced side-by-side in the attachment to this letter.

As is evident from the side-by-side comparison, claim 1 in the reexamination is nearly identical to asserted claim 22, and it was not cancelled during the reexamination. In the parties' arguments concerning bifurcation, it was apparent that minor changes in the scope of a claim might result from a reexamination decision. Your Honor's Order denying bifurcation recognized that those issues could be dealt with in post-trial briefing after the bench trial on the current claims. The changes here, which would not affect either side's validity or infringement arguments based on the current claims 22 and 23, are exactly the type of minor changes we believe the Court had in mind. LEO Pharma fully understands and agrees with the Court's decision not to try the case given the current status of the reexamination proceeding, but dismissal based on Tolmar's misleading assertion that the reissued claims will drastically change is unwarranted.

Tolmar's argument that the world changed by issuance of the BPAI's decision because prosecution then officially closed by operation of 35 CFR § 1.198 is also incorrect. When LEO Pharma's bifurcation motion was filed, briefing and oral argument before the BPAI were complete. There was no practical way for LEO Pharma to make changes to its claims or resurrect any claims at that time, and thus the state of affairs today is the same as it was on April 20, 2011. In any event, as explained above, jurisdiction over the original and still enforceable patent remains with this Court until the reexamination certificate issues.

* * *

The Honorable Sue L. Robinson
May 4, 2012
Page 3

Tolmar's proposed dismissal is an improper attempt to short-circuit the 30-month stay and prevent LEO Pharma from asserting a patent which it still has a right to assert. This would upset the status quo and the balance embodied in the Hatch-Waxman Act. LEO Pharma requests that the Court instead exercise its discretion to stay the part of the case relating to the '013 patent pending final resolution of the reexamination, namely issuance of the certificate. *See Ho Keung Tse v. eBay, Inc.*, No. C 11-01812, 2011 WL 3566437, at \*1 (N.D. Cal. Aug. 12, 2011) ("The decision to stay a patent infringement action pending resolution of a reexamination by the USPTO is within the discretion of the district court.").

Respectfully,

Jack B. Blumenfeld (#1014)

JBB/bac
Enclosure
5906170.3
cc:    Clerk of the Court (Via Hand Delivery; w/enclosure)
       Adam Poff, Esquire (Via Electronic Mail and Hand Delivery; w/enclosure)
       David Dolkas, Esquire (Via Electronic Mail; w/enclosure)
       William E. Solander, Esquire (Via Electronic Mail; w/enclosure)

| 22. | 1. (Twice Amended) |
|---|---|
| A pharmaceutical composition comprising: | A pharmaceutical composition for dermal use, said composition comprising: |
| a first pharmacologically active component A consisting of at least one vitamin D or vitamin D analogue selected from the group consisting of seocalcitol, calcipotriol, calcitriol, tacalcitol, maxacalcitol, paricalcitol, falecalcitriol, 1a,24S-dihydroxy-vitamin D2, 1(S),3(R)-dihydroxy-20(R)-[((3-(2-hydroxy-2- propyl)-phenyl)-methoxy)-methyl]-9,10-seco-pregna-5(Z),7(E),1O(19)-triene and mixtures thereof; and | a first pharmacologically active component A consisting of at least one vitamin D analogue selected from the group consisting of seocalcitol, calcipotriol, calcitriol, tacalcitol, maxacalcitol, paricalcitol, falecalcitriol, 1α,24S-dihydroxy-vitamin D2, 1(S),3(R)-dihydroxy-20(R )-[((3-(2-hydroxy-2-propyl)-phenyl)-methoxy)-methyl]-9,10-seco-pregna-5(Z),7(E),10(19)-triene and mixtures thereof; and |
| a second pharmacologically active component B consisting of at least one corticosteroid, wherein the difference between the maximum stability pH of said first component A and the maximum stability pH of said second component B is at least 1; and at least one solvent component C selected from the group consisting of: | a second pharmacologically active component B consisting of at least one corticosteroid, wherein the difference between the maximum stability pH of said first component A and the maximum stability pH of said second component B is at least 1; and at least one solvent component C selected from the group consisting of: |
| (i) compounds of the general formula $R^3(OCH_2C(R^1)H)_xOR^2$ (I) wherein x is in the range of 2-60, $R^1$ in each of the x units independently is H or $CH_3$, $R^2$ is straight chain or branched $C_{1-20}$ alkyl or benzoyl, and $R^3$ is H or phenylcarbonyloxy; | (i) compounds of the general formula $R^3(OCH_2C(R^1)H)_xOR^2$ (I) wherein x is in the range of 2-60, $R^1$ in each of the x units is $CH_3$, $R^2$ is straight chain or branched $C_{1-20}$ alkyl or benzoyl, and $R^3$ is H or phenylcarbonyloxy; |
| (ii) straight or branched $C_{2-4}$-alkyl esters of straight or branched $C_{10-18}$-alkanoic or -alkenoic acids; | (ii) straight or branched $C_{2-4}$-alkyl esters of straight or branched $C_{10-18}$-alkanoic or -alkenoic acids; |
| (iii) propylenglycol diesters with $C_{8-14}$-alkanoic acids; and | (iii) propyleneglycol diesters with $C_{8-14}$-alkanoic acids; and |
| (iv) branched primary $C_{18-24}$ alkanols; | (iv) branched primary $C_{18-24}$ alkanols, |
| wherein said pharmaceutical composition is storage stable, non-aqueous and in a single container. | wherein said pharmaceutical composition is storage stable and non-aqueous. |
| 23. | 23. (Amended) |
| The pharmaceutical composition of claim 22, wherein said pharmaceutical composition is stable when stored at 40° C. for 3 months. | The pharmaceutical composition of claim 1, wherein said pharmaceutical composition is stable when stored at 40° C. for 3 months. |